# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

TANYA NEUBAUER,

      Plaintiff,

*vs*.

Case No. 1:20-cv-1466-WCG

CAPITAL LINK MANAGEMENT LLC;
INTEGRITY RECOVERY MANAGEMENT
LLC; SAMUEL PICCIONE, individually;
DENISA PICCIONE, individually; and
JONATHAN RINKER, individually.

      Defendants.

## AMENDED COMPLAINT FOR VIOLATIONS OF THE
## FAIR DEBT COLLECTION PRACTICES ACT

This action is brought by Plaintiff, Tanya Neubauer, against Defendants, Capital Link Management LLC, ("CLM"), Integrity Recovery Management LLC ("IRM"), Samuel Piccione, Denisa Piccione, and Jonathan Rinker ("RINKER") based on the following:

### I. PRELIMINARY STATEMENT

1. Plaintiff brings this action for the illegal practices of Defendants when attempting to collect an alleged debt from her in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.

2. Such practices include attempting to collect consumer debts by engaging in conduct prohibited by, or failing to engage in conduct required by, the FDCPA.

3. The FDCPA regulates the behavior of "debt collectors" (including collection agencies, collection attorneys, debt buyers) when attempting to collect a consumer debt. Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which "contribute to a number of personal bankruptcies,

marital instability, loss of jobs, and invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA was expressly adopted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

4. The FDCPA, at 15 U.S.C. § 1692c, prohibits when and with whom a debt collector may communicate when attempting to collect a debt and, at 15 U.S.C. § 1692b, limits communications with third parties to the collection of "location information."

5. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015).

6. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

7. When collecting or attempting to collect a debt, the FDCPA bars a debt collector's use of: (a) false, deceptive, or misleading means or representations; and (c) unfair or unconscionable means. 15 U.S.C. §§ 1692d, 1692e, and 1692f. Each of those Sections contain a list of specific *per se* violations but they are nonexclusive and do not limit the general application of each Section's broad prohibitions.

8. When the collection process starts, the FDCPA requires a debt collector to provide a consumer with basic debt information and the consumer's right to debt-verification. 15 U.S.C. § 1692g.

9. A debt collector's conduct violates the FDCPA when viewed from the perspective of an "unsophisticated debtor." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). "The unsophisticated consumer is uninformed, naive, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Williams v. OSI Educ. Servs., Inc*, 505 F.3d 675, 678 (7th Cir. 2007) (internal editing notations and quotation marks omitted).

10. A single violation is sufficient to establish liability. *Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir. 2002).

11. When a debt collector fails to comply with the FDCPA "with respect to any person," it "is liable to such person in an amount equal to the sum of" "any actual damage sustained," "additional" or statutory damages, costs, and reasonable attorneys' fees. Statutory damages are limited: a plaintiff may recover no more than $1,000.

12. Plaintiff seeks such relief as is allowed under FDCPA including, without limitation, statutory damages, attorney fees and costs.

## II. PARTIES

13. Plaintiff is a natural person who, at all times relevant to this lawsuit, was a citizen of and resided in the City of Neenah, Winnebago County, Wisconsin.

14. At all times relevant to the factual allegations of this Complaint, CLM was a for-profit limited liability corporation formed under the laws of the State of New York.

15. On information and belief, CLM maintains its principal place of business at 100 Corporate Parkway, Suite 106, Buffalo, New York 14226.

16. CLM's registered agent in New York is DENISA PICCIONE, 455 Commerce Dr., Suite 7, Amherst, New York 14228.

17. At all times relevant to the factual allegations of this Complaint, IRM was a for-profit limited liability corporation formed under the laws of the State of Nevada.

18. On information and belief, IRM maintains its principal place of business at 7455 Arroyo Crossing Parkway, Suite 220, Las Vegas, Nevada 89113.

19. IRM's registered agent in Nevada is LegalCorp Solutions, LLC, 2831 Saint Rose Parkway, Suite 200-400, Henderson Nevada 89052-4840.

20. SAMUEL PICCIONE is a natural person who, at all times relevant to the factual allegations of this Complaint, was an owner, managing member, and chief executive officer of CLM and IRM.

21. On information and belief, SAMUEL PICCIONE maintains an address of 4894 Mount View Drive, Lockport, New York 14094.

22. DENISA PICCIONE is a natural person who, at all times relevant to the factual allegations of this Complaint, was an owner, managing member, and registered agent of CLM.

23. On information and belief, DENISA PICCIONE maintains an address of 4894 Mount View Drive, Lockport, New York 14094.

24. RINKER is a natural person who, at all times relevant to the factual allegations ot this Complaint, was an owner and managing member of IRM and CLM, as well as chief operating officer of CLM.

25. On information and belief, RINKER maintains an address of 6296 Milleville Circle, Sanborn, New York 14132.

### III. JURISDICTION & VENUE

26. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1337.

27. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to claims occurred within this federal judicial district, and because each Defendant is subject to personal jurisdiction in the State of Wisconsin at the time this action is commenced.

### IV. FACTS

28. CLM regularly engages in the collection of defaulted consumer debts alleged to be owed to others.

29. CLM is a business the principal purpose of which is the collection of defaulted consumer debts.

30. In attempting to collect debts, CLM uses instruments of interstate commerce such as the mail, telephone, and the Internet.

31. IRM regularly engages in the collection of defaulted consumer debts alleged to be owed to others.

32. IRM is a business the principal purpose of which is the collection of defaulted consumer debts.

33. In attempting to collect debts, IRM uses instruments of interstate commerce such as the mail, telephone, and the Internet.

34. During all times pertinent hereto, SAMUEL PICCIONE, DENISA PICCIONE, and RINKER: (a) created and impelented the collection policies and procedures used by IRM and CLM, and their respective employees and agents, in connection the collection of Plaintiff's debt; (b) managed and controlled the daily collection IRM and CLM to collect Plaintiff's debt; (c) oversaw and personally engaged in application of the collection policies and procedures used

by IRM and CLM, as well as IRM and CLM's employees and agents complained of herein; (d) personally drafted, created, approved and implemented the tactics and scripts used by IRM and CLM and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint; (e) ratified the unlawful debt collection practices and procedures used by IRM and CLM and their employees and agents in connection with their efforts to collect Plaintiff's debt; and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by themselves, IRM, and CLM and their employees and agents in their attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

35. On information and belief, CLM, Samuel Piccione, Denisa Piccione, and Jonathan Rinker collectively drafted and transmitted, or caused to be drafted and transmitted, via electronic means to Plaintiff a communication on September 30, 2019 (the "Communication").

36. A true and correct copy of the Communication is attached as *Exhibit A*, except that portions are redacted.

37. *Exhibit A* is the first written communication Defendants sent Plaintiff.

38. The Communication alleges Plaintiff incurred and defaulted on a financial obligation (the "Debt") originally owed to "CashNetUSA/UHG LLC."

39. *Exhibit A* does not identify the current creditor of the Debt.

40. The Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

41. Plaintiff has only incurred financial obligations for personal, family, or household purposes and not in any business transaction or in any transactions other than ones which were for personal, family, or household purposes.

Page **6** of **13**
Case 1:20-cv-01466-WCG    Filed 11/20/20    Page 6 of 13    Document 9

42. The Communication purported to be from "IRM, LLC" and included a return address of 7455 Arroyo Crossing Ste 220, Las Vegas, NV 89113.

43. The Communication made a limited, one-time, take-it-or-leave-it "Settlement Offer" to "settle" the Debt on the condition that Plaintiff make pay the same day:

> Pursuant to our discussion and our client's approval we are authorized to offer you a settlement on the above referenced account. Upon receipt of <u>cleared</u> funds, your account will be considered settled in full. Each payment must be received in our office no later than the close of business on the date indicated below. This offer represents a substantial savings over the actual amount of $4,178.34 owed and is an opportunity for you to take care of this obligation at a greatly reduced cost. If payments are not received in the indicated amounts and on or before the date due, this offer is hereby revoked, and Integrity Recovery Management is under no further obligation to honor the terms of this offer.
>
> $2,114.17 due on 09/30/19 for paid in full and removed from all credit reports.

44. The Communication violated 15 U.S.C. 1692e(11), which requires a debt collector to disclose in the initial written communication and all subsequent communications that the communication is from a debt collector.

45. The Communication gave Plaintiff a few hours to accept the "Settlement Offer" but, even then, gave no indication of how payment was to be made.

46. The Communication made it impossible for Plaintiff to "settle" her Debt.

47. The Communication made it impossible for Plaintiff to "settle" her Debt without calling to confirm "cleared funds" were received.

48. The Communication purported to be signed by "Frank Andrews" with a telephone number of "844 200 2349."

49. On information and belief, "Frank Andrews" is a fictional individual.

50. The Communication went on to state: "[s]hould you have questions you can reach us by calling (833) 748-3648."

51. The two telephone numbers listed on the Communication are owned by, paid for, answered by, and maintained by CLM.

52. The Communication did not disclose any affiliation or relationship between IRM or CLM.

53. The Communication's reference to falsely states "we," "us," and "our" means IRM.

54. Upon receiving the Communication, the unsophisticated consumer was confused, how to obtain the benefits of the "Settlement Offer."

55. Upon receiving the Communication and calling "Frank Andrews", unsophisticated consumers would not understand why s/he received a communication purporting to be from IRM yet CLM answered the telephone.

56. Upon receiving the Communication, Plaintiff did not not know the Communication was actually from a debt collector attempting to collect a debt, or that any information s/he requested by telephone or in writing about the "Settlement Offer" or Debt would be used to collect the Debt.

57. The Communication was intended to induce Plaintiff to immediately call one or both of the telephone phone numbers listed on Communication, whereupon she would be subjected to high pressure, deceptive, tactics to coerce Plaintiff to pay the Debt in its entirety—or more than the Settlement Offer.

58. The Communication was intended to conceal the identity of the Debt's current creditor, and CLM's involvement, because such facts would make it more likely Plaintiff would

ask important questions about the actual entity to whom the Debt was owed and why, thus making it significantly harder for Defendants to extract any payment from Plaintiff.

59. The Communication does not inform Plaintiff that the only way she could accept the "Settlement Offer" was by sending her payment via a wire transfer or other norevocable electronic payment and, therefore, once Defendants had Plaintiff's money in hand it was too late for her to dispute the Debt, get honest information about the Debt, or get her payment returned.

60. The Communication falsely states that any delay in Plaintiff's payment would cause her to lose the opportunity to obtain the financial benefits of the "Settlement Offer" and any further chance to have the Debt "removed from all credit reports."

61. The Debt had never been reported to any credit reporting agencies.

62. The Debt was not listed on any of Plaintiff's credit reports.

63. The Communication falsely implies the Debt had been reported to all of the credit reporting agencies.

64. The Communication's statement that Plaintiff's Debt would be "removed from all credit reports" if she paid that day was a lie.

65. The Communication does not state whether IRM would return Plaintiff's payment uncashed if payment was received *after* September 30, 2019, which also impacted her decision and ability to accept the "Settlement Offer."

66. The statement that the creditor's "Settlement Offer" is contingent upon receipt of payment "no later than the close of business" on the same day—mere hours after Plaintiff received the Communication—is materially false, deceptive, and misleading because the offer was *never* contingent—the creditor of the Debt would *always* honor the "Settlement Offer" irrespective of the date, time, or method the payment was received.

67. The Defendants always accept "late" payments received in response to a "Settlement Offer" like the Communicationa and, therefore, the Communication's statement that "Integrity Recovery Management is under no further obligation to honor the terms of this offer," which was untrue.

68. The Communication's statements about settlement were materially false, deceptive, and misleading because they influence the unsophisticated consumer's decision to pay the Debt and encourage hasty acceptance of a limited, one-time-take-it-or-leave-it "Settlement Offer" which, if not accepted, will be forever lost.

69. The Communication's statements about settlement are materially false, deceptive, and misleading because they impact the unsophisticated consumer's decision on how to triage which of their debts to pay, in which order, and how to achieve the best economic outcome for themselves and their families.

70. A rational person with limited financial resources would, based on the Communication, choose to pay the Debt over an otherwise identical debt in which the Communication transmitting the offer did not communicate the false impression the offer was a one-time take-it-or-leave-it offer which must be accepted within hours.

71. The Communication deprived Plaintiff of truthful, non-misleading infromation in connection with Defendants' attempt to collect a debt.

## V. CAUSE OF ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

72. The factual allegations in the preceding paragraphs are realleged and incorporated herein.

73. CLM is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

74. IRM is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

75. SAMUEL PICCIONE is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

76. DENISSA PICCIONE is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

77. RINKER is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

78. The Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

79. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

80. *Exhibit A* is a "communication" as defined by 15 U.S.C. § 1692a(2).

81. Defendants' use and transmission of *Exhibit A* violated the FDCPA in one or more following ways:

   (a) Using a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e;

   (b) Using a false representation of the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A);

   (c) Using or distributing a written communication which creates a false impression as to its source, authorization, or approval in violation of 15 U.S.C. § 1692e(9);

   (d) Using a false representation or deceptive means to collect or attempt to collect a debt attempt to collect a debt and to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

   (e) Failing to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose in violation of 15 U.S.C. § 1692e(11);

   (f) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization in

Page **11** of **13**
Case 1:20-cv-01466-WCG   Filed 11/20/20   Page 11 of 13   Document 9

violation of 15 U.S.C. § 1692e(14);

(g) Using unfair and unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f

(h) Failing to provide Plaintiff with written notice as required by 15 U.S.C. § 1692g(a);

(i) Failing to identify the name of the creditor to whom the debt is owed in violation of § 15 U.S.C. 1692g(a)(2); and

(j) Designing, compiling, and furnishing a form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not participating, in violation of 15 U.S.C. § 1692j(a).

## VI. PRAYER FOR RELIEF

82. WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, in the form of an Order:

(a) Awarding statutory damages to Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A);

(b) Awarding attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3);

(c) Awarding, to the extent the recovery of reasonable attorneys' fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3) causes a negative tax consequence to Plaintiff, a sum sufficient to ameliorate such consequences; and,

(d) Ordering such other and further relief as may be just and proper.

### VII. JURY DEMAND

83. Trial by jury is demanded on all issues so triable.

Dated: November 20, 2020

*s/Katelyn B. Busby*
*Katelyn B. Busby*
Francis R. Greene (WI Bar # 1115577)
Andrew T. Thomasson (NJ Bar # 048362011)
Katelyn B. Busby (AR Bar #2014155)
  *Attorneys for Plaintiff, Tanya Neubauer*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
Telephone: (973) 548-0122
E-mail: Francis@SternThomasson.com
E-mail: Andrew@SternThomasson.com
E-mail: Katelyn@SternThomasson.com